This is a suit in which the plaintiff seeks to recover compensation for total permanent disability by reason of an accident which occurred on August 24, 1942, while he was in the employ of the defendant, A. Farnell Blair.
Plaintiff is a young man, in his early twenties. He had been following the occupation of a farmer prior to the time there was so much public construction work going on in Vernon Parish. He secured employment with the defendant and was rated as a carpenter's helper, working at the time Camp Polk was being constructed.
He alleges that whilst employed as such on the day of the accident, he was walking the floor joists of a building under construction, carrying lumber to the carpenter who was laying it down. He slipped and fell between the joists to the ground in such a manner that his back struck a plank and he was knocked unconscious.
In paragraph four of his petition he sets out the nature and the extent of his injuries, the-result of which was the pulling and twisting of the vertebrae of the lower part of his back out of position, and the muscles, ligaments, tissues, nerves and blood vessels in that region were strained. Further he alleges that the cartilage between the vertebrae, the ligaments and other tissues have been permanently impaired and "that his entire back and neck have been permanently injured and has resulted in the permanent impairment of his brain throughout his body, both functional and organic."
He then sets out the treatment he received and alleges that after he had partially recovered from his injury he took a course of training at the De Soto Foundry at Mansfield, Louisiana, but on account of his injury was unable to continue and has not been able to return to any employment and follow any occupation continuously. He also alleges that he was paid compensation by the defendant up to December 14, 1942, in the sum of $168.48, for which he acknowledges credit and then prays for judgment for the full amount of compensation he claims, that is $5616, payable weekly for a period of 400 weeks, less the amount he has already been paid.
The defendants filed a joint answer in which they admit plaintiff's employment, the nature of his work and that he suffered an accident on the date alleged, for which they aver however he received treatment and was paid compensation at the rate of $14.04 per week through December 14, 1942, at which time he was discharged *Page 744 
by the attending physician, Dr. H.M. Prothro as having fully recovered from any accidental injury and able to go back to work. Defendants further admit that plaintiff worked for the De Soto Foundry, Inc., after his discharge by Dr. Prothro, but they deny that he discontinued work because of any disability caused by the accidental injury on which he relies to recover compensation.
These are the sole issues in the case on which it was tried in the district court after which judgment was rendered in favor of the defendants, dismissing the plaintiff's suit and he has taken the present appeal.
As there seems to be no dispute as to the happening of the accident and that plaintiff sustained some injury, it seems unnecessary to refer to his testimony concerning it and that of several witnesses called to corroborate him. The only question about the accident is its severity and the extent of the injury he sustained because of it. Plaintiff would have it appear that he fell several feet to the ground but there is testimony to the effect that none of the buildings at the camp were more than two and one-half to three feet off the ground, so it would not seem that he had a fall from any considerable height. He and his witnesses say that he was rendered unconscious or at least semi-unconscious, but the testimony of Dr. M.S. Stephens, who first saw him, is that he was not when he examined him. According to the doctor he complained of having been injured on his side although it now develops that his whole complaint is about his back.
He was attended by Dr. Stephens at the first aid station and taken care of until four o'clock in the afternoon. Dr. Stephens administered the usual treatment for the contusions which he found. That afternoon he was in condition to be sent home, on a bus with other employees, where he remained for three days before returning to the doctor for further treatment. In the meantime he developed an attack of appendicitis and had to be operated on. The operation was performed by Dr. H.M. Prothro, his family physician, at Pleasant Hill, Louisiana on September 1, 1942. According to this doctor he had an uneventful recovery from the operation and it is not contended now that his accident had anything to do with having brought on the attack of appendicitis.
After he recovered from the operation he went to see Dr. Stephens for further treatment, but Dr. Stephens having learned that Dr. Prothro had attended to him at Pleasant Hill, advised him to submit to him for further treatment of his injury which he did. Dr. Prothro continued to treat him until December 14, 1942, when, as he testified, he found him well enough to be discharged and able to return to work.
Plaintiff did not return to work at Camp Polk but through a brother-in-law secured a job as an apprentice moulder in the De Soto Foundry at Mansfield. That was about the middle of February, 1943. Apparently he went through his apprenticeship without any trouble but he testified that after he started to do the actual work of a moulder which required heavier duties, he discovered that he was unable to carry on. He was unable to work regularly because of feeling bad so often and had vomitting spells. On one occasion his foreman saw him in one of these spells and told him that he did not think he was able to do the work that was required of him and he had to stop. He now bases his claim entirely on a case of traumatic-psychoneurosis, resulting as is contended, from the accident sustained by him on August 24, 1942. A proper determination of his claim necessarily rests on the medical evidence before the court.
Dr. Stephens, Dr. Prothro, Dr. T.S. Watkins and Dr. C.G. McKinney testified as witnesses for the defendant and Dr. O.L. Sanders and Dr. D.L. Kerlin as witnesses for the plaintiff.
We begin with Dr. McKinney's testimony because it is limited to his specialty as a radiologist. He made three x-ray plates of the plaintiff's back and seems to be very positive that they showed absolutely nothing wrong at all with him. He found no evidence of any strain to the nerves, ligaments or tendons as the vertebrae were not curved and neither were the bodies rotating. Had there been an injury he says it would have produced spasms of the muscles with rotation of the bodies. From his standpoint as a radiologist he seemed to be convinced that there was no evidence of any injury which would have produced traumatic neurosis.
Dr. Watkins gave him a rather complete examination and said he could find no injury of any kind to his back. He had the plaintiff go through certain bending *Page 745 
and sidewise exercises and whilst he says that plaintiff complained that he could not bend over alone he put him through a test which satisfied him that he could. He examined the x-rays taken by Dr. McKinney and agrees with the latter that they show no evidence of injury and no abnormality in the position of the vertebrae.
Dr. Stephens, who was employed by the defendants to treat and look after their employees, was the doctor to whom plaintiff was sent after he was hurt. If Dr. Stephens' testimony is to be given any consideration at all, it would seem a bit difficult to understand how this young man could be suffering from such a severe back injury as he now complains has upset his whole nervous system. Testifying from the records made by him at the time of his examination Dr. Stephens says that he saw him at about 2:30 p.m. on August 24, 1942, and at that time he found contusions of the right lower chest. He thought that there was a probable fracture of a rib but later it developed that that was not so. He says that the plaintiff did not complain to him about his back at all. He treated him with local applications, strapped his side and used infrared rays. He saw him subsequently on October 31, September 9, and October 10th. In the meantime he had had the operation for appendicitis and that is when he told him that it would be better for him to continue being treated by Dr. Prothro. That is the last that he saw of plaintiff. From the nature of the injury which he saw and treated plaintiff for at the time, this doctor was of the opinion that he should have recovered from the contusions and bruises in about three weeks.
Dr. Prothro, as already stated, is the doctor whom plaintiff consulted when he developed appendicitis and who operated on him in the early part of September which was only a few weeks after the accident. It was after he had gotten over the effects of the appendicitis operation and had gone back to Dr. Stephens that the latter referred him back to Dr. Prothro for his complaint about his injury. He complained to Dr. Prothro of his back. The doctor strapped it and applied heat treatments. This lasted two or three months, that is until December 14, 1942, when he determined then that plaintiff no longer had any disabling condition. He made an x-ray which showed no bone injury and no bone pathology. He then discharged him as being able to resume ordinary manual labor. Dr. Prothro as well as Dr. Stephens recognized that there is such a thing as traumatic-neurosis which can cause disability but as we read their testimony we do not think they see any evidence of any injury which produced such a condition in this plaintiff.
Dr. Sanders, plaintiff's witness, examined him and from objective symptoms which he describes as well as the history of the case given him, stated his opinion that the injury which plaintiff sustained precipitated a condition of psychoneurosis. The objective symptoms he refers to were a fast pulse, elevation of blood pressure and outward signs of nervousness as evidenced by tremors of hands and eyes. In the absence of any organic disease he says that these symptoms could cause him to consider it a case of neurosis.
Dr. Kerlin who also testified for the plaintiffs seems to have been a bit more confirmed in his opinion that it is a case of traumatic psychoneurosis. He described pretty much the same objective symptoms as Dr. Sanders and says that he relied principally on the history given to him by the plaintiff. This history covered the period of practically his whole life and also details as to how the accident happened. The doubt that is, to be found in the conclusion reached by this doctor can be attributed to what perhaps was not a true history given him by the patient. For instance the doctor testified about his having examined x-rays and reviewed medical information as a result of an examination made of the plaintiff while he was in the Charity Hospital in Shreveport immediately following his injury. The only proof found in the record that plaintiff ever went to the Charity Hospital in Shreveport for this injury comes from his own statement that he went there for an examination at some indefinite time which he thinks may have been the latter part of May, 1943. That, it will be noted, was not immediately following the accident but ten months 'after. Besides, in giving the doctor a report of the accident and injury it seems that plaintiff exaggerated quite a bit as he told him he had fallen from a height of ten or eleven feet. Such a fall naturally would have produced a rather hard blow to the back but in view of Dr. Stephens' testimony and what he found at the time plaintiff reported to him *Page 746 
right after the accident, it is hard to reconcile the different histories given by him.
Dr. Kerlin also in discussing the history which plaintiff gave him concerning his health before the accident seems to be of the impression that he was somewhat of an emotional character, pre-disposed to nervousness. However all the testimony of plaintiff's friends intended to show the active work he engaged in before his injury as compared to his condition afterwards, is to the effect that he has always been a strong, healthy and robust individual and worked regularly and hard as a farm laborer.
The most important phase of the case as far as the plaintiff's contention is concerned relates to the condition which developed after he was employed at the De Soto Foundry. Evidently there was something wrong with him then but the condition he described did not seem to have come from a back injury. His complaints were of some digestive disturbance, which he has not shown, by sufficient evidence, bore any relation to the accident of August 24, 1942.
Our appreciation of the testimony leads us to agree with the conclusions reached by the trial judge. At least we are unable to point out manifest error in the judgment appealed from and it will therefore be affirmed.
For the reasons stated it is now ordered that the judgment of the district court be and the same is hereby affirmed at the costs of the plaintiff, appellant herein